UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MILTON, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 21-cv-08545-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO SEVER AND DISMISS**<br><br>Re: ECF No. 20 |

Plaintiffs, a group comprising 52 presently or formerly incarcerated persons, filed this action on behalf of themselves and a class seeking redress for alleged injuries they suffered as a result of a July 20, 2020, incident at Correctional Training Facility (CTF) Soledad. ECF No. 1.[1] Defendants now move to sever the action and dismiss the complaint. ECF No. 20.[2] The Court

---

[1] Forty-six Plaintiffs were allegedly targeted in the July 2020 incident: Shelton Adams, Robert Blackwell, Frederick Brinkley, Lawrence Brown, Terrence Brownlee, Danny Camel, Dwain Campbell, Maurice Caples, Anthony Chambers, Daniel Colvin, Anthony Copeland, Christopher Cox, Berlan Dicey, Ricky Duncan, Rahsaan Fitzgerald, Ricky Fontenot, Marvin Foster, Marcelle Franklin, Eric Frazier, Jonathan Hamilton, Claude Harper, Bernard Harris, Erwin Harris, Mark Harris, Rashaun Horn, Kevin Jackson, Nathanial Johnson, Antoine Keil, Anthony King, Gary Lawless, Darreyl Lewis, Michael McCurty, Troy Mendenhall, Alexander Moss, Reginald Nettles, Joseph O'Neal, Ronald R. Patterson , Derrice Porter, Michael Rhines, Chris Robinson, Cedric Sanchez, Gary Sasser, Ronald Smallwood, Damon Terrell, Clifford Williams, and Quinn Wilridge (collectively "Incident Plaintiffs"). ECF No. 1 ¶¶ 12-25, 27-45, 47-49, 51, 53-56, 58-60, 62-63. Nine Plaintiffs allegedly contracted COVID-19 as a result of the July 2020 incident: Shelton Adams, Frederick Brinkley, Lawrence Brown, Vickter Estrada, William Milton, William Pardue (who "brings an action on behalf of the estate [of his deceased son, Raemon Pardue,] and himself individually"), Saul Pelayo, Adam Sanford, and Robert White (collectively "COVID-19 Plaintiffs"). ECF No. 1 ¶¶ 12, 14-15, 26, 46, 50, 52, 57, 61. Of these, three Plaintiffs –Adams, Brinkley, and Brown – were both present for the July 2020 incident and subsequently caught COVID-19. ECF No. 1 ¶¶ 12, 14-15. Plaintiffs also bring several claims on behalf of a putative class defined as "all inmates housed at CTF Soledad that contracted COVID-19 from July 20, 2020, through March 15, 2021," which Plaintiffs estimate comprises approximately 2,719 people. ECF No. 1 ¶ 620.

[2] Defendants in this action are the State of California, through the California Department of

will grant the motion in part and deny it in part.

I.   **BACKGROUND**

Plaintiffs bring claims under 42 U.S.C. §§ 1983, 1985 and state law based on allegations that Defendants intentionally targeted Black individuals incarcerated at CTF Soledad prison with physical violence and exposure to COVID-19 on July 20, 2020, and that such exposure caused the subsequent infection of over 2,700 individuals incarcerated at the facility. ECF No. 1. For the purposes of deciding this motion to dismiss, the Court accepts as true the following factual allegations contained in Plaintiffs' complaint.

On July 20, 2020, forty-six Plaintiffs ("Incident Plaintiffs"), all of whom are Black, were roughly awakened in the middle of the night by a group of about three dozen officers. The officers did not have visible name tags; some wore name tags obscured with tape. Incident Plaintiffs were forcibly removed from their beds and transported to a dining hall for holding and interrogation. Some were naked, while others were forced to strip when they reached the dining hall. The officers shouted racial epithets at Incident Plaintiffs throughout the incident. Forty-five Incident Plaintiffs report suffering physical injuries during this process.

Throughout the incident, the officers expressed indifference to Incident Plaintiffs' COVID-19 safety concerns. Incident Plaintiffs were generally not permitted to retrieve masks, clothes, or shoes to wear. Few or no officers wore protective face masks during the incident.[3] Between 80

---

Corrections and Rehabilitation ("CDCR"); as well as Warden Craig Koenig, Commanding Officer Brown, Commanding Officer Luna, Commanding Officer Y. Martinez, Commanding Officer McDowell, Officer J. Bojorquez, Officer B. Cope, Officer J.G. Lopez, Officer C. Mell, Officer D. Metcalfe, Officer S. Mora, Officer H. Orozco, Officer J.K. Peffley, Officer Isidro P. Perez, Officer J. Reed, Officer L. Scott, Officer J. Sesma, Officer C.S. Villalobos, and an unknown number of other guards (Does 1-100) (collectively "Individual Defendants"). ECF No. 1 ¶¶ 64-85.

[3] While the complaint refers to several officers being "masked," Plaintiffs appear to use the word to refer to tactical gear of the type used by law enforcement, not medical masks protective against viral transmission. *See* ECF No. 1 ¶¶ 266 ("[t]he officers' . . . faces[] were covered"), 279 ("one of his assailants . . . was masked"), 370 ("masked guard"), 393 ("masked men"), 437 ("masked men in riot gear"), 498 ("masked ISU officers"), 504 ("individuals wearing helmets with . . . masks"), 506 ("unknown masked men"), 509 ("masked intruders"), 547 ("Brown reports that members of the raiding party were wearing full riot gear. It is not clear, however, whether a riot mask does or does not offer good protection against COVID-19 transmission . . . [as] the mask is typically open at the bottom.").

and 150 men were held in the dining hall for up to 8.5 hours, in close proximity to each other, without the ability to follow social distancing requirements. Most or all of the men were unmasked.

There were no COVID-19 infections at CTF Soledad prior to the July 2020 incident, and the first reported cases of COVID-19 at the facility occurred among individuals housed near the interrogation site, at least one of whom was present for the incident. Within approximately 10 days of the July 2020 incident, Brown tested positive for COVID-19. Patterson and Raemon Pardue contracted COVID-19 at some point in late July. D-Wing, where Brown, Patterson, and Pardue all resided, went into quarantine on August 1, 2020. The virus then spread from D-Wing to the rest of the prison. Adams, Estrada, Milton, Pelayo, Sanford, and White each contracted the virus between November and December 2020.[4] The virus infected an estimated total of 2,719 people incarcerated at CTF Soledad between July 20, 2020, and March 15, 2021.

Plaintiffs plead twelve causes of action, which include violations of Section 1983, Section 1985, the California Ralph Act, and the California Bane Act, as well as state law torts of assault, battery, intentional infliction of emotional distress, negligence, and negligent supervision.

## II.   JURISDICTION

As several of Plaintiffs' claims arise under Sections 1983 and 1985, this Court has subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiffs' state law causes of action under 28 U.S.C. § 1367.

---

[4] Adams, who was present for the July 2020 incident, received a positive test result for COVID-19 on November 18, 2020, ECF No. 1 ¶ 137; Estrada believes he contracted COVID-19 on or around December 24, 2020, from contaminated food trays, *id.* ¶ 282; Milton believes he contracted COVID-19 in late November or early December 2020, but believes his positive test may have been falsified to move him to a group quarantine area and thus infect him with the virus, *id.* ¶ 424; Pelayo tested positive on November 15, 2020, after a COVID-positive individual who had not completed quarantine was transferred into his cell, *id.* ¶¶ 453, 456; Sanford tested positive for COVID-19 on November 5, 2020, *id.* ¶ 492; and White tested positive for COVID-19 on November 27, 2020, *id.* ¶ 520. Brinkley is also identified as both a "raid victim and a person that caught COVID-19," but the complaint contains no information about when or how he contracted the virus. *Id.* ¶ 14.

## III. LEGAL STANDARD

### A. Motion to Sever – Rule 20

District courts are granted "broad discretion" when deciding whether to grant severance. *Coleman*, 232 F.3d at 1297. "Under Federal Rule of Civil Procedure 20(a), permissive joinder of plaintiffs 'is proper if (1) the plaintiffs assert a right to relief arising out of the same transaction and occurrence and (2) some question of law or fact common to all the plaintiffs will arise in the action.'" *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000)). "Even once these requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman*, 232 F.3d at 1296 (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). "If joined plaintiffs fail to meet both of [the Rule 20(a)] requirements, the district court may sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). "Rule 20 . . . is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes." *League to Save Lake Tahoe v. Tahoe Reg. Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977).

### B. Motion to Dismiss – Rule 12(b)(6)

"Dismissal under [Federal Rule of Civil Procedure] 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As the Ninth Circuit explained in *Starr v. Baca*:

4

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable.

652 F.3d 1202, 1216 (9th Cir. 2011). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## IV.   DISCUSSION

### A.   Requests for Judicial Notice

The Court first addresses Plaintiffs' and Defendants' unopposed requests for judicial notice. ECF Nos. 20-1, 26-1. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). However, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). If a fact is not subject to reasonable dispute, the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

Defendants request judicial notice of (1) CDCR COVID-19 trend data (both overall, and for the Correctional Training Facility, California State Prison-Los Angeles, Pelican Bay State Prison, and the Richard J. Donovan Correctional Facility), all available on the agency's website; and (2) the Centers for Disease Control and Prevention's Assessment for Duration of Isolation, available on the agency's website. ECF No. 20-1 at 2. Plaintiffs request judicial notice of (1) CDCR COVID-19 trend data for the California Institute for Men, San Quentin State Prison, Avenal State Prison, California Rehabilitation Center, California City Correctional Facility, Chuckawalla State Prison, and Folsom State Prison, all available on the agency's website; and (2)

5

1  a COVID-19 timeline published on the website of the California Correctional Health Care
2  Services.
3      All of the materials proposed by both parties are government records taken from websites
4  maintained by government agencies and therefore properly subject to judicial notice. *See DeHoog*
5  *v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 n.5 (9th Cir. 2018) (taking judicial notice of
6  "government documents . . . and undisputed matters of public record"); *Rollins v. Dignity Health*,
7  338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018) (noting that, "because of their perceived reliability,
8  courts have often admitted records taken from websites maintained by government agencies").
9  The Court therefore takes judicial notice of CDCR COVID trend data (both overall and for
10 California State Prison-Los Angeles, Pelican Bay State Prison, the Richard J. Donovan
11 Correctional Facility, the California Institute for Men, San Quentin State Prison, Avenal State
12 Prison, California Rehabilitation Center, California City Correctional Facility, Chuckawalla State
13 Prison, and Folsom State Prison); the Centers for Disease Control and Prevention's Assessment
14 for Duration of Isolation; and the California Correctional Health Care Services COVID-19
15 timeline.
16      **B.    Motion to Sever**
17      Defendants move to sever from this action all Incident Plaintiffs who did not contract
18 COVID-19 and all COVID-19 Plaintiffs not present for the July 2020 incident, leaving only
19 Plaintiffs who both were present for the July 2020 incident *and* subsequently contracted COVID-
20 19. ECF No. 20 at 19. Defendants argue that the joinder of Incident Plaintiffs who did not
21 contract COVID-19 to this action "does not promote judicial economy and confuses and
22 complicates the issues" because there are questions of fact and causation unique to each of their
23 alleged injuries. *Id.* Defendants similarly argue that the joinder of COVID-19 Plaintiffs not
24 present for the July 2020 incident will "complicate trial and potentially confuse a jury" because
25 such Plaintiffs "will have to present different theories for many of the claims Plaintiffs assert." *Id.*
26 at 20. Plaintiffs oppose severance, arguing that all claims in suit arise out of "the same
27 transaction," the July 2020 incident; that severance would "represent a serious injustice to
28 Plaintiffs [who] deserve one jury to know the full story" of the July 2020 incident; and that

severance would pose practical challenges and waste judicial resources. ECF No. 26 at 18-22.

The Court finds that severance of COVID-19 Plaintiffs not present for the July 2020 incident is proper because Plaintiffs presently joined in this action do not meet the Rule 20(a)(1) requirements for permissive joinder and allowing the action to proceed in this form would violate principles of fundamental fairness.

### 1.     Same Transaction or Occurrence

Defendants contend that the Plaintiffs presently joined in this action do not "assert any right to relief . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" as required by Rule 20(a)(1). Fed. R. Civ. P. 20(a)(1)(A). "The Ninth Circuit has interpreted the phrase 'same transaction, occurrence, or series of transactions or occurrences' to require a degree of factual commonality underlying the claims." *Jacques v. Hyatt Corp.*, No. 11-cv-05364-WHA, 2012 WL 3010969, at *3 (N.D. Cal. July 23, 2012) (quoting *Bravado Int'l Grp. Merc. Servs. v. Cha*, No. 09-cv-9066-PSG, 2010 WL 2650432, at *4 (N.D. Cal. June 30, 2010)).

Plaintiffs respond that the harms alleged by all Plaintiffs arise from a single occurrence – the July 2020 incident. This may be true for Incident Plaintiffs, who allegedly sustained injuries on the date of the incident, and whose right to relief therefore arose on that date. But the claims of the COVID-19 Plaintiffs not present for the July 20 incident accrued on their respective dates of injury – that is, on the date that each one contracted COVID-19. While each such Plaintiff's infection may ultimately prove traceable to an outbreak initiated by the July 2020 incident, it cannot be said that each asserts a "right to relief . . . arising out of" that incident.

Plaintiffs' claims also lack the underlying "factual commonality" contemplated by the same transaction or occurrence requirement. *Jacques*, 2012 WL 3010969, at *3. Although all COVID-19 Plaintiffs allege they contracted the virus during an outbreak arising from Defendants' conduct during the July 2020 incident, each such Plaintiff alleges a different factual basis for how they were exposed to and/or contracted the virus—that is, for how each was actually injured. *Compare* ECF No. 1 ¶¶ 453-456 (alleging infection from being housed with COVID-positive individual who had not completed quarantine on or around November 7, 2020), *with id.* ¶ 282

7

(alleging infection from contaminated food trays on or around December 24, 2020). Some COVID-19 Plaintiffs do not allege any facts regarding how they were exposed to the virus. *See, e.g.*, *id.* ¶ 137 (stating only that Adams "was informed he had also contracted COVID-19"); 634 tbl.5 (stating only that Brinkley "was diagnosed with COVID-19"). These claims lack the degree of factual commonality required to meet the same transaction or occurrence requirement of Rule 20(a)(1).

Courts in this district have also held that "the single transaction or occurrence requirement is not met where plaintiffs would have to prove their claims or defendants would have to litigate their defenses on an individualized basis." *Corley v. Google, Inc.*, 316 F.R.D. 277, 284 (N.D. Cal. Aug. 19, 2016). The events alleged in the complaint are such a circumstance. Here, each COVID-19 Plaintiff will need to prove that Defendants' actions on July 20, 2020, caused their specific months-later infection with COVID-19. Each accused Defendant will need to litigate different defenses to the claims of each individual Plaintiff. Plaintiffs thus fail to meet the single transaction or occurrence requirement of Rule 20(a)(1).

### 2. Common Question of Law or Fact

Rule 20 also requires that at least one question of law or fact common to all plaintiffs arise in this action. Fed. R. Civ. P. 20(a)(1)(B). Common to at least some claims brought by every plaintiff in this action is Defendants' state of mind regarding the possibility that the July 2020 incident would aid the spread of COVID-19 at CTF Soledad; though the scienter requirements vary across the asserted claims, the question of what Defendants intended, knew, or should have known is common to many of them. Because Plaintiffs cannot meet the first of Rule 20 joinder requirement, however, this is insufficient for the Court to find proper joinder here.

### 3. Fundamental Fairness

Even if Plaintiffs could meet both requirements for joinder, this Court would exercise its Rule 21 discretion to sever to prevent jury confusion, promote judicial efficiency, and prevent unfair prejudice to Defendants. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party [or] sever any claim against a party.") Courts "*must* examine whether permissive joinder would 'comport with the principles of fundamental fairness'

8

1   or would result in prejudice to either side." *Coleman*, 232 F.3d at 1296 (emphasis added) (quoting
2   *Desert Empire Bank*, 623 F.2d at 1375). Factors relevant to the fundamental fairness inquiry
3   "may include judicial economy, prejudice, and whether separate claims require different witnesses
4   and documentary proof." *Jacques*, 2012 WL 3010969, at *2.

5   Maintaining this action in its current form would lead to jury confusion, judicial
6   inefficiency, and prejudice to Defendants. This action involves 52 named Plaintiffs, a putative
7   class comprising over 2,700 people, 20 named Defendants, and an unknown number of
8   unidentified Defendants (Does 1-100). For each of their individual claims, each named Plaintiff
9   must prove a specific injury attributable to a particular Defendant. And the proof required for
10  claims brought by Incident Plaintiffs has little in common with that required for claims brought by
11  COVID-19 Plaintiffs. Thus, in its current form, this action would require the Court to hold dozens
12  of mini trials regarding the individual circumstances in which each Plaintiff was injured, which
13  would be an inefficient use of limited judicial resources and could lead to jury confusion and
14  undue prejudice to Defendants. *See Corley*, 316 F.R.D. at 289-90 (severing in the interest of
15  fundamental fairness due to "the potential for hundreds of mini-trials," "the likelihood of jury
16  confusion," and the "impracticality of joinder"); *Armstead v. City of Los Angeles*, 66 F. Supp. 3d
17  1254, 1270-71 (C.D. Cal. 2014) (severing on fundamental fairness grounds where "[p]ermitting
18  joinder in this action would . . . lead to eighteen individual actions under a single caption,"
19  resulting in "judicial inefficiency, prejudice, and delay"); *see also Coleman*, 232 F.3d at 1297
20  ("The district court properly considered the potential prejudice to [Defendant] created by the
21  parade of [Plaintiffs] and the possibility of factual and legal confusion on the party of the jury.").

22  Courts may sever in the interests of fundamental fairness "as long as no substantial right
23  will be prejudiced by the severance." *Coughlin*, 130 F.3d at 1351. Plaintiffs argue that "[t]o sever
24  these cases, and thereby tell the jury only half the story of what CTF guards tried to do and did –
25  untethering the infection component of the raid from the assault component – would represent a
26  serious injustice to Plaintiffs," who "deserve one jury to know the full story." But Plaintiffs offer
27  no authority suggesting that 52 Plaintiffs have a right to have all their claims heard together in a
28  single forum, and the Court has difficulty imagining how such a trial could be successfully

1  managed. Nor would the Court's order of severance act as a bar to the presentation of relevant
2  evidence in the trial of any severed claim. Plaintiffs identify no substantial right that could be
3  prejudiced by severance, and this Court does not discern any.

### 4. Case Management

Having found that joinder of all Plaintiffs in this action is improper, the Court will exercise its Rule 21 authority to sever. Fed. R. Civ. P. 21. Courts can remedy misjoinder by dismissing claims without prejudice to the filing of individual actions. *Visendi*, 733 F.3d at 870-71.

Here, Defendants argue that all of the 42 Incident Plaintiffs who did not contract COVID-19 and all seven COVID-19 Plaintiffs not present for the July 2020 incident should be severed from this action, leaving only Adams, Brinkley, and Brown, each of whom was present for the July 2020 incident and subsequently contracted COVID-19. While the Court agrees this action is judicially unmanageable in its current form, the Court need not go that far to address its manageability concerns.[5] Instead, the Court will sever and dismiss, without prejudice, the claims of COVID-19 Plaintiffs not present for the July 2020 incident: Estrada, Milton, Pardue (in his individual capacity and on behalf of the estate of Raemon Pardue), Pelayo, Sanford, and White. This action will proceed with only Incident Plaintiffs.[6,7]

### C. Motion to Dismiss

Defendants move to dismiss: (1) all claims against the State of California; (2) the COVID-19-related claims of all COVID-19 Plaintiffs except Brown; (3) the intentional infliction of emotional distress claims of 45 named Plaintiffs;[8] (4) all Plaintiffs' negligent supervision claims;

---

[5] Defendants may renew their motion to sever at a later date – for instance, to request separate trials of smaller groups of Plaintiffs – if subsequent developments in the case make further severance appropriate.

[6] Adams, Blackwell, Brinkley, Brown, Brownlee, Camel, Campbell, Caples, Chambers, Colvin, Copeland, Cox, Dicey, Duncan, Fitzgerald, Fontenot, Foster, Franklin, Frazier, Hamilton, Harper, B. Harris, E. Harris, M. Harris, Horn, Jackson, Johnson, Keil, King, Lawless, Lewis, McCurty, Mendenhall, Moss, Nettles, O'Neal, Patterson, Porter, Rhines, Robinson, Sanchez, Sasser, Smallwood, Terrell, Williams, and Wilridge remain Plaintiffs to this action after severance.

[7] The Court recognizes that a trial involving even this smaller group of plaintiffs might prove unmanageable. The Court can explore the benefit of a further severance, bellwether trials, or other case management techniques, as the case approaches trial.

[8] Defendants argue that Blackwell, Brinkley, Brownlee, Caples, Chambers, Colvin, Cox, Dicey, Duncan, Estrada, Fitzgerald, Fontenot, Franklin, Frazier, Hamilton, Harper, B. Harris, E. Harris,

1   (5) all claims brought by Pardue in his individual capacity; and (6) all claims brought by

2   Blackwell and White.  ECF No. 20.

### 1.     Claims Brought by Patterson

Plaintiffs' complaint contains contradictory allegations regarding Plaintiff Ronald R. Patterson.  Patterson is first identified in the complaint as a "raid victim."  ECF No. 1 ¶ 51.  Elsewhere, the complaint states that "[n]either Pardue nor his cellmate, Ronald Patterson, was a direct victim of the raid."  *Id*. ¶ 550.  Patterson is not identified as having contracted COVID-19 in the Plaintiff Parties Identified section of the complaint, *id.* ¶¶ 10-63, and is entirely omitted from the plaintiff summaries listed in the Statement of Facts, *id.* ¶¶ 125-538.  However, the complaint later identifies him as a COVID-19 Plaintiff.  *Id.* ¶¶ 448 ("[I]t is probably the case that Pardue passed the virus to Patterson."), 550 ("[Patterson] began to experience clear and obvious symptoms of COVID-19 prior to the end of July 2020.").  Further, as Defendants correctly note, "Plaintiff Ronald R. Patterson does not make any specific allegations as the basis for his participation in the complaint."  ECF No. 20 at 24 n.5.

While Defendants do not specifically argue Patterson's claims should be dismissed, this Court "may dismiss a claim sua sponte under [Rule 12(b)(6)] . . . without notice where the claimant cannot possibly win relief."  *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987).  Because it is not clear from the complaint whether Patterson was present for the July 2020 incident and Patterson makes no specific allegations of injury in the complaint, the Court will dismiss all claims brought by Patterson without prejudice.

### 2.     Claims Against the State of California

Defendants move to dismiss all claims against the State of California (acting through CDCR) as barred by the Eleventh Amendment and state-law immunities.  ECF No. 20 at 20.  Defendants argue that all claims against CDCR for damages are barred by the Eleventh Amendment.  *Id.*  Additionally, Defendants argue that CDCR is statutorily immune from tort

---

M. Harris, Horn, Jackson, Johnson, Keil, King, McCurty, Mendenhall, Milton, Moss, Nettles, O'Neal, Pardue, Patterson, Pelayo, Porter, Rhines, Robinson, Sanchez, Sanford, Sasser, Smallwood, Terrell, White, Williams, and Wilridge do not allege they suffered severe or extreme emotional distress.  ECF No.  20 at 25 n.8.

11

1   liability under California Government Code § 815(a) and statutorily immune from liability for
2   "injury to a prisoner" under § 844.6(a)(2). *Id.* In response, Plaintiffs state they "could not
3   construct a route around Government Code [§] 844.6," which the Court construes as conceding
4   that all of Plaintiffs' state law claims against CDCR are barred.

5   Therefore, the Court will dismiss all of Plaintiffs' state law claims against the State of
6   California, acting through CDCR, with prejudice.

### 3.  COVID-19-Related Claims

Defendants also move to dismiss the COVID-19-related claims of all Plaintiffs, except Brown, who allege they contracted COVID-19 for failing to allege a temporal link between the July 2020 incident and their infection with COVID-19. ECF No. 20 at 24. Defendants argue that COVID-19 Plaintiffs not present for the July 2020 incident do not plausibly allege that Defendants' actions during the incident caused their later infections with the virus. *Id.* at 24-25. Because the Court will sever and dismiss the claims of all COVID-19 Plaintiffs not present for the July 2020 incident, the Court need not consider Defendants' arguments about claims brought by now-dismissed Plaintiffs.

Of the Plaintiffs remaining in this case, Defendants argue that Adams and Brinkley have not properly alleged causation. Adams was informed he contracted COVID-19 on November 18, 2020, ECF No. 1 ¶ 137, while Brinkley was diagnosed with COVID-19 on or about November 5, 2020, *id.* ¶ 634 tbl.5. Plaintiffs allege that Brown was infected during the July 2020 incident, and that the virus subsequently spread throughout the facility. Plaintiffs do not offer facts regarding how Adams or Brinkley may have been exposed to the virus. They do not explain where either Plaintiff was housed, which would at least permit the Court to assess whether these Plaintiffs' exposure to the virus plausibly fits within Plaintiffs' general theory of viral spread in the facility. Because Plaintiffs have not provided sufficient factual content to demonstrate that Adams' or Brinkley's exposure to COVID-19 in November 2020 resulted from the July 2020 incident, the Court grants Defendants' motion to dismiss these claims without prejudice.

### 4.  Intentional Infliction of Emotional Distress Claims

Defendants move to dismiss the intentional infliction of emotional distress claims of 45

1    named Plaintiffs. ECF No. 20 at 25.[9] Defendants argue that Plaintiffs' complaint fails to

2    sufficiently allege that some Plaintiffs suffered severe or extreme emotional distress. ECF No. 20

3    at 25. Plaintiffs argue that such specific pleading is not required at the motion to dismiss stage by

4    courts in this district. ECF No. 26 at 41-42.

5          To state a claim for intentional infliction of emotional distress under California law, a

6    plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention of

7    causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

8    suffering severe or extreme emotional distress; and (4) actual and proximate causation of the

9    emotional distress by the defendant's outrageous conduct." *Lawler v. Montblanc N. Am., LLC*,

10   704 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)).

11   Courts in this district generally require parties raising intentional infliction of emotional distress

12   claims to "allege sufficient facts, which if proved true, would entitle them to relief." *Palm v.*

13   *United States*, 835 F. Supp. 512, 518 (N.D. Cal. 1993) (denying motion to dismiss where plaintiffs

14   "specifically allege that they are suffering severe emotional distress, and allege facts about their

15   respective conditions that could indicate such distress"); *see, e.g.*, *Burnell v. Marin Humane Soc'y*,

16   No. 14-cv-5635-JSC, 2015 WL 6746818, at *65 (N.D. Cal. Nov. 5, 2015) (dismissing claim where

17   complaint "is absent of any facts pertaining to the nature and extent of Plaintiffs' emotional or

18   mental suffering"); *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 712 (N.D. Cal. 2014)

19   (dismissing claim where plaintiff "fail[ed] to allege any form of emotional distress beyond the

20   conclusory allegation that Defendants' actions 'cause[d] her mental anguish, anxiety, and

21   distress'" and "fail[ed] to explain the nature and extent of the mental distress suffered"); *Moss v.*

22   *Bank of New York Trust*, No. 10-cv-01734-JSW, 2011 WL 13243802, at *2 (N.D. Cal. Oct. 13,

23   2011) (dismissing claim where plaintiff "did not plead any facts which describe the allegedly

---

[9] Because the Court will sever and dismiss the claims of Estrada, Milton, Pardue (whom Defendants count twice), Pelayo, Sanford, and White, the Court only considers Defendants' argument as to the 38 remaining Plaintiffs they argue have not met this standard: Blackwell, Brinkley, Brownlee, Caples, Chambers, Colvin, Cox, Dicey, Duncan, Fitzgerald, Fontenot, Franklin, Frazier, Hamilton, Harper, B. Harris, E. Harris, M. Harris, Horn, Jackson, Johnson, Keil, King, McCurty, Mendenhall, Moss, Nettles, O'Neal, Patterson, Porter, Rhines, Robinson, Sanchez, Sasser, Smallwood, Terrell, Williams, and Wilridge.

severe emotional distress that he suffered"); *Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Washington Mutual, Inc.*, No. 10-cv-02842-WHA, 2010 WL 3769459, at *6 (N.D. Cal. Sept. 22, 2010) (dismissing claim where "complaint lack[ed] specific facts describing the severe emotional distress suffered"); *Wolk v. Green*, 516 F. Supp. 2d 1121, 1132 (N.D. Cal. 2007) (dismissing claim where plaintiff "[did] not allege that she suffered any severe emotional trauma"); *but see Canine v. Liberty Mut. Ins.*, No. 06-cv-00317, 2006 WL 515628, at *3 (N.D. Cal. Mar. 1, 2006) (denying dismissal where the "Court assume[d Plaintiff's] general allegation of extreme emotional distress embraces the specific facts necessary to support it" because, "charitably read, the Complaint suggests that Defendants' actions caused [Plaintiff] to feel severely vexed, annoyed, and harassed").

Plaintiffs argue that they "ple[aded] the facts about the event that would cause a reasonable person of normal sensibility to suffer such distress and generally confirmed that they, based on this experience, did indeed suffer such distress." ECF No. 26 at 44. It may well be that, on the facts pleaded here, a reasonable person would suffer emotional distress. But individual Plaintiffs must do more than "generally confirm[]" that each one suffered emotional distress. *Id.* They must each "allege facts about their respective conditions that could indicate such distress," *Palm*, 835 F. Supp. at 518, or "explain the nature and extent of the mental distress suffered," *Landucci*, 65 F. Supp. 3d at 712. That some Plaintiffs did allege sufficient facts to sustain such a claim does not excuse the remaining Plaintiffs from their obligation to do so. At minimum, for each Plaintiff to maintain a claim for intentional infliction of emotional distress, each must allege some facts to suggest he has actually suffered severe or extreme emotional distress.

Because Blackwell, Brinkley, Brownlee, Caples, Chambers, Colvin, Cox, Dicey, Duncan, Fitzgerald, Fontenot, Franklin, Frazier, Hamilton, Harper, B. Harris, E. Harris, M. Harris, Horn, Jackson, Johnson, Keil, King, McCurty, Mendenhall, Moss, Nettles, O'Neal, Patterson, Porter, Rhines, Robinson, Sanchez, Sasser, Smallwood, Terrell, Williams, and Wilridge have not alleged sufficient facts to plausibly plead claims for intentional infliction of emotional distress, the Court will dismiss these claims without prejudice. Any amendment must include specific facts regarding the nature of these Plaintiffs' emotional distress.

14

### 5.  Negligent Supervision Claims

Defendants move to dismiss Plaintiffs' negligent supervision claim because no allegations regarding negligent supervision are made against any Defendant except the State of California, which is immune from this claim. ECF No. 20 at 26. Plaintiffs do not object to Defendants' characterization of the allegations in the complaint. ECF No. 26 at 45.

The Court will accordingly dismiss these claims without prejudice.

### 6.  Claims Brought by Blackwell

Finally, Defendants move to dismiss all claims brought by Blackwell for failure to properly exhaust administrative remedies before filing suit, as required by the Prison Litigation Reform Act (PLRA). ECF No. 20 at 27.[10] Plaintiffs argue that, because Blackwell was released from confinement prior to the filing of the complaint, he was not required to exhaust administrative remedies. ECF No. 26 at 47.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 . . . or any other Federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "requires that a prisoner challenging prison conditions exhaust available administrative remedies before filing suit." *Albino v. Baca*, 747 F.3d 1162, 1165 (9th Cir. 2014) (en banc). "The exhaustion requirement, however, does not apply to non-prisoners." *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017); *see id.* at 937 ("A plaintiff who was a prisoner at the time of filing his suit but was not a prisoner at the time of his operative complaint is not subject to a PLRA exhaustion defense."); *Talamantes v. Leyva*, 575 F.3d 1021, 1024 (9th Cir. 2009) ("[I]t is undisputed that Talamantes was released from custody over a year before filing his action in federal court. Therefore, he was not required to exhaust administrative remedies before filing this action."); *Page v. Torrey*, 210 F.3d 1136, 1140 (9th Cir. 2000) ("[O]nly individuals who, at the

---

[10] Defendants also move to dismiss all claims brought by William Pardue in his individual capacity, ECF No. 20 at 26-27, and all claims brought by White, *id.* at 29. Because the Court will sever and dismiss the claims of William Pardue and Robert White, the Court need not reach these issues.

15

time they seek to file their civil actions, *are detained* as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 42 U.S.C. § 1997e.") (emphasis added). Plaintiffs allege, and Defendants do not dispute, that Blackwell was not in custody on the date this lawsuit was filed. ECF No. 1 at ¶ 92 Table 2 No. 2. As such, Blackwell's claims are not subject to a PLRA exhaustion defense.

The Court will deny Defendant's motion to dismiss Blackwell's claims.

### 7. Leave to Amend

Plaintiffs seek leave to amend their complaint. ECF No. 26 at 51. "[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). This Court will grant leave to amend.

First, the Court grants Plaintiffs leave to amend their complaint to plead specific allegations as a basis for Patterson's participation if he was, in fact, present for the July 2020 incident.

Second, the Court grants Plaintiffs leave to amend their complaint to include Title VI claims against the State of California through CDCR. However, the Court finds that amendment of Plaintiffs' Ralph Act, Bane Act, mass assault, mass battery, mass intentional infliction of emotional distress, negligence, and negligent supervision claims against the State of California through CDCR would be futile.

Third, the Court grants Plaintiffs leave to amend their complaint as to Adams' and Brinkley's COVID-19 claims. In their amended complaint, Plaintiffs should allege sufficient facts to suggest Adams' and Brinkley's infections with COVID-19 in November 2020 are attributable to Defendants' actions during the July 2020 incident.

Fourth, the Court grants Plaintiffs leave to amend their complaint as to the intentional infliction of emotional distress claims brought by Blackwell, Brinkley, Brownlee, Caples, Chambers, Colvin, Cox, Dicey, Duncan, Fitzgerald, Fontenot, Franklin, Frazier, Hamilton, Harper, B. Harris, E. Harris, M. Harris, Horn, Jackson, Johnson, Keil, King, McCurty, Mendenhall, Moss, Nettles, O'Neal, Patterson, Porter, Rhines, Robinson, Sanchez, Sasser, Smallwood, Terrell,

Williams, and Wilridge. Any amendment should allege specific facts regarding the nature of these Plaintiffs' emotional distress.

Finally, the Court grants Plaintiffs leave to amend their complaint to expressly allege that individual supervisors were negligent.

## CONCLUSION

The Court grants, in part, Defendants' motion to sever. The Court will sever and dismiss all claims of Plaintiffs Vickter Estrada, William Milton, William Pardue, Saul Pelayo, Adam Sanford, and Robert White. This case will proceed with Plaintiffs Shelton Adams, Frederick Brinkley, Lawrence Brown, Robert Blackwell, Terrence Brownlee, Danny Camel, Dwain Campbell, Maurice Caples, Anthony Chambers, Daniel Colvin, Anthony Copeland, Christopher Cox, Berlan Dicey, Ricky Duncan, Rahsaan Fitzgerald, Ricky Fontenot, Marvin Foster, Marcelle Franklin, Eric Frazier, Jonathan Hamilton, Claude Harper, Bernard Harris, Erwin Harris, Mark Harris, Rashaun Horn, Kevin Jackson, Nathanial Johnson, Antoine Keil, Anthony King, Gary Lawless, Darreyl Lewis, Michael McCurty, Troy Mendenhall, Alexander Moss, Reginald Nettles, Joseph O'Neal, Ronald R. Patterson, Derrice Porter, Michael Rhines, Chris Robinson, Cedric Sanchez, Gary Sasser, Ronald Smallwood, Damon Terrell, and Clifford Williams.

The Court also grants, in part, Defendants' motion to dismiss: Plaintiffs' claims against the State of California through CDCR; all claims brought by Ronald R. Patterson; all COVID-19-related claims brought by Shelton Adams and Frederick Brinkley; the intentional infliction of emotional distress claims brought by Plaintiffs Blackwell, Brinkley, Brownlee, Caples, Chambers, Colvin, Cox, Dicey, Duncan, Fitzgerald, Fontenot, Franklin, Frazier, Hamilton, Harper, B. Harris, E. Harris, M. Harris, Horn, Jackson, Johnson, Keil, King, McCurty, Mendenhall, Moss, Nettles, O'Neal, Patterson, Porter, Rhines, Robinson, Sanchez, Sasser, Smallwood, Terrell, Williams, and Wilridge; and all of Plaintiffs' negligent supervision claims are hereby dismissed.

Plaintiffs may file an amended complaint within 28 days of this order solely to address the deficiencies identified in the order. Failure to timely file an amended complaint will result in

/ / /

/ / /

dismissal of the relevant claims with prejudice.

**IT IS SO ORDERED.**

Dated:  December 28, 2022



JON S. TIGAR
United States District Judge