1
2
3
4                   UNITED STATES DISTRICT COURT
5                 NORTHERN DISTRICT OF CALIFORNIA
6
7   SHELTON ADAMS, et al.,              Case No. 21-cv-08545-JST
8                Plaintiffs,
                                        **ORDER OF ADMONISHMENT**
9        v.
                                        Re: ECF No. 115
10  CRAIG KOENIG, et al.,
11                Defendants.
12

13          Now before the Court is Defendants' "Notice of Uncivil and Harassing Behavior and

14  Request for Admonishment" ("Notice").  ECF No. 115.  The Court will grant Defendants' request

15  to admonish Plaintiffs' counsel.

16  **I.      BACKGROUND**

17          This is one of a group[1] of cases relating to a raid allegedly conducted in the Summer of

18  2020 against incarcerated persons housed at the Correctional Training Facility at Soledad.  In each

19  case, Benjamin Pavone represents the plaintiffs and the same group of attorneys in the California

20  Attorney General's office represents the defendants.

21          On July 21, 2025, Defendants in this action filed a document titled, "Notice of Uncivil and

22  Harassing Behavior and Request for Admonishment" ("Notice").  ECF No. 115.  Defendants filed

23  the Notice to bring certain conduct by Plaintiffs' counsel, Mr. Pavone, to the Court's attention.

24  Specifically, the Notice alleged that Mr. Pavone had made the following rude, uncivil, or insulting

25  statements:

26

27  ───────────────
    [1] The other cases are *Estate of Pardue v. California Dep't of Corr. & Rehab.*, Case No. 23-cv-
28  0582 (N.D. Cal.); *Underwood v. California Dep't of Corr. & Rehab.*, Case No. 24-cv-4399 (N.D.
    Cal.); and *Brown v. California Dep't of Corr. & Rehab.*, Case No. 25-cv-4741 (N.D. Cal.)

United States District Court
Northern District of California

- In response to a suggestion by Defense counsel that Plaintiff's counsel's class action allegations were without merit, Pavone wrote, "Maybe you should be assigned to misdemeanor problems, where you belong.  There must a [sic] be a cat stuck in a tree somewhere."  ECF No. 115-1 ¶ 5; *id.* at 8.

- On July 8, 2025, Pavone sent an email to opposing counsel stating, "I would sincerely suggest your clients reconsider [a position taken in discovery].  Honestly, it feels like something the KKK [Ku Klux Klan] would do."  ECF No. 115-1 at 22.  The same email stated, "If they are in reality just a bunch of racists playing dress up and peek-a-boo, then I am going to start treating them like that, respectfully.  I possess broad powers."  *Id.*

- In a phone call among counsel on July 10, 2025, Mr. Pavone accused defense counsel of using "KKK tactics."  ECF No. 115-1 ¶ 11.

- Later that same day, Mr. Pavone sent an email to a member of Defense counsel's secretarial staff, asking if she could "please survey the office to secure a consensus on which title best fits [Deputy Attorney General] John [Faulconer]:

    Supreme Grand Wizard – president
    Klaliff – vice president (from Caliph)
    Klokard – lecturer (from Kloran and kard, meaning "teacher")
    Kludd – chaplain (from Culdee)[44]
    Kligrapp – secretary (from chirographer)
    Klabee – treasurer (supposedly derived from kaba, "to keep", and kees, an Egyptian coin
    Kladd – "conductor", in charge of initiating new members
    Klarogo – inner guard, sergeant-at-arms (from caveo and "interrogate")
    Klexter – outer guard (from ken and "external")

    (Trigger warning: this abuse will continue unabated, until your clients reconsider their position.)

    KKKind regards,
    -Ben"

ECF No. 115-1 at 26 (apparently referring to offices held by members of the Ku Klux Klan).

On July 11, 2025, in response to the above email, Supervising Deputy Attorney General Jeffrey Fisher sent a letter to Mr. Pavone.  The letter stated,

> This communication was harassing, abusive, inappropriate behavior by an officer of the court, and violates the Guidelines for Professional Civility.  Inferring your opposing counsel is a Ku Klux Klan member or sympathizer is not acceptable conduct.  To threaten that further abuse will continue is also not acceptable.  To aggressively direct that behavior to a member of the attorneys' support staff only makes it more egregious.  Do not attempt further communication with Ms. Su or any other of our support staff.
>
> Given the nature of the conduct, your expressed intent to continue it,

and that it is not the first time you have behaved abusively toward DOJ employees in this case, we will seek Court intervention if you make any further harassing, abusive, or inappropriate comments to any DOJ employee or attempt to contact our staff.

ECF No. 115-1 at 31.

Fifteen minutes after the letter was sent over email, Mr. Pavone responded by email, "I was joking.  I won't joke with any of you ever again."  *Id.* at 36.  However, two-and-a-half hours later, Mr. Pavone sent an invective-filled email to Mr. Fisher.  ECF No. 115-1 at 39.   Insults in the email included:

- that defense counsel was "having a crisis of self-image by representing an organization whose behavior is functionally indistinguishable from the KKK";

- that representing an organization that is the equivalent of the KKK "must feel like a psychological anchor around your neck.  It must absolutely shatter your self-image, especially if you were invested in some great sense of your own inherent goodness, as you San Francisco types tend to do.";

- "Every day for the next five years you will have to live with doing this evil organization's work.  You must perpetuate their lies.  You must hide their evidence.  You must wriggle, and dodge, and avoid the reality of representing clients who are so debased that they spewed racial invective like they were slavers in the Deep South.  You cannot even bring yourself to craft declarations to justify their actions.  This must be morally unbearable.";

- "As far as I am concerned, your letter today is, quite simply, a confession.  It announces the morality crisis you are experiencing in having to represent these lowlifes."; and

- "Announce to the world who you are.  Hold a press conference.  Shout from the rooftops: 'I have realized that I am effectively the KKK's lawyer and I am mad that my opposing counsel has revealed this unbearable truth to me!'  I'll be happy to corroborate your public confession with 100 declarations."

*Id.* at 39–40.

On July 21, 2025, having concluded that "further efforts to deal directly with Plaintiffs' counsel to address the issue [would] not be fruitful," Defendants filed the Notice, asking the Court to "admonish Plaintiffs' counsel that his behavior is unacceptable."  ECF No. 115 at 3.

Mr. Pavone's response to the Notice was multi-part.  On July 22, 2025, he filed a document titled, "Placeholder Declaration of Benjamin Pavone Re: Ethics."  ECF No. 118.  Mr. Pavone asserted that he is "more knowledgeable about ethics than 99% of lawyers" but that he was "extremely busy right now."  *Id.* at 2.  He further stated that he "[did] not have time to attend to

3

defense counsel's non-mission-critical, non-motion gripe filing . . . only to say that most lawyers understand ethics in a manner that is exactly backwards from legal reality, including these defense lawyers," and that he would "later demonstrate this by providing them an expensive ethics tutorial, one styled as a Rule 11 motion for sanctions, when [his] schedule clears up." *Id.* He stated that he intended to file a more comprehensive response in the future. *Id.*

On July 24, 2025, the Court issued an order requiring Mr. Pavone to file a substantive response to the Notice by July 31, 2025. ECF No. 119. It ordered that the response not exceed ten pages, excluding attachments. *Id.* Later that day, Mr. Pavone filed a document titled "Second Declaration of Benjamin Pavone Re: Scheduling of Opposition Brief Re Ethics Dispute." ECF No. 120. Mr. Pavone called the Defendants' lawyers "nothing more than a bunch of disingenuous hypocrites, ones who are practicing feigned, selective outrage now that it seems tactically opportune." *Id.* at 2. He labelled Defendants' lawyers "behavior . . . representative of everything that is wrong with the State of California today." *Id.* He asserted that his response to the Notice should have been due on August 5, 2025, instead of July 31, 2025, and that he would file it on the later date. *Id.* He did not seek the Court's permission to exceed the court-ordered July 31, 2025 deadline.

In the midst of all this, on July 31, 2025, the parties filed competing proposed case schedules as required by a separate order of the Court ("Scheduling Proposals"). ECF No. 122. Plaintiffs' portion of the Scheduling Proposals contained a new batch of insulting and denigrating commentary about Defendants' counsel, including the following:

- "Defendants are adopting anonymity tactics comparable to ones employed by the Ku Klux Klan in the 1860s . . . ." *Id.* at 3.

- "Plaintiffs will do everything in their power to remedy and disincentivize CDCR's anonymity practices. The Department [of Corrections and Rehabilitation], having formally decided to embrace them, permits Plaintiffs' comparisons of it to the Ku Klux Klan." *Id.* at 3 n.3 (citing cases).

- "As against poor $16B/yr CDCR's plea for sympathy on the claim that Plaintiff counsel is supposedly burying it with discovery requests – a lie, but one that is particularly untenable in this case – Plaintiff counsel notes that he is effectively litigating this case as a solo practitioner, while Defendants now have *five attorneys* assigned to it." *Id.* at 4 (footnote omitted).

United States District Court
Northern District of California

- "As to "specific discovery," meaning discovery aimed at individual parties, *it is CDCR's KKK defense that necessitates special discovery*." ECF No. 122 at 5.

- "Finally, as far as Plaintiffs' scheduling positions in the table below go, the dates selected reflect the unfolding realization that Defendants are apparently willing to commit perjury in discovery, and, will seek maximum delay by exploiting their KKK anonymity defense." *Id.* at 6.

Mr. Pavone finally filed his response to the Notice on August 4, 2025 ("Response"). ECF No. 125. Notwithstanding the page limits set by the Court, the Response consisted of a 36-page brief, an eight-page declaration, and 549 pages of exhibits. Mr. Pavone neither denied having made any of the challenged statements nor offered an apology for his conduct. If anything, he doubled down. For example:

- He noted that "defense lawyers (typically connected to bigger organizations) write in a kind of banal academic monotone, devoid of creativity or imagination, in text that is often indistinguishable from the instruction manual for a refrigerator." *Id.* at 14.

- He acknowledged insulting Deputy Attorney General Sandhu but claimed that he did so "tactically." *Id.* at 15.

- He referred to Attorney Sandhu as a "doe-in-the-woods." *Id.* at 16.

- He described the Defendants' legal team of having an "apparent lack of sufficient moral backbone (with the possible exception of Attorney Faulconer, who at least seems to be struggling with the issue) that allows them to execute CDCR's preference to capitalize on the tactics of the Ku Klux Klan, in the first instance." *Id.* at 30.

Mr. Pavone categorized his statements as attempts at humor. He also argued that he had an unrestricted First Amendment right to make them.

## II.    ANALYSIS

Several authorities impose an obligation of civility on attorneys who practice in California's state and federal courts. This Court's Civil Local Rule 11-4(a)(3), for example, requires an attorney practicing in this Court to "maintain respect due to courts of justice and judicial officers. Civ. L.R. 11-4(a)(3). Subpart (4) requires that attorneys "practice with the honesty, care, and decorum required for the fair and efficient administration of justice." Civ. L.R. 11-4(a)(4).

The California State Bar's Attorney Guidelines of Civility and Professionalism ("Civility

1    Guidelines") require, among other things, that "an attorney's communications about the legal

2    system should at all times reflect civility, professional integrity, personal dignity, and respect for

3    the legal system."  Civility Guidelines at 4, available at

4    https://www.calbar.ca.gov/Portals/0/documents/ethics/Civility/Atty-Civility-Guide-Revised_Sept-

5    2014.pdf.  "For example, in communications about the legal system and with adversaries . . . .  An

6    attorney should not disparage the intelligence, integrity, ethics, morals or behavior of the court or

7    other counsel, parties or participants when those characteristics are not at issue."  *Id.* at 4–5.

8    Also, "an attorney should avoid hostile, demeaning or humiliating words."  *Id.* at 5.

9          The Northern District of California Guidelines for Professional Conduct state, in relevant

10   part, that "lawyers owe a duty of professionalism to their clients, opposing parties and their

11   counsel, the courts, and the public as a whole.  Those duties include, among others: civility,

12   professional integrity, personal dignity, candor, diligence, respect, courtesy, cooperation and

13   competence."  Northern District of California Guidelines for Professional Conduct, available at

14   https://cand.uscourts.gov/forms/guidelines-for-professional-conduct/.  They further provide that "a

15   lawyer should at all times be civil, courteous, and accurate in communicating with opponents or

16   adversaries, whether in writing or orally."  *Id.*  "Every attorney who enters an appearance in this

17   matter shall be deemed to have pledged to adhere to the Guidelines."  *Id.*

18         Mr. Pavone defends his conduct by arguing that his comments to opposing counsel were

19   intended to be humorous.  He states that "the most skilled lawyers (judges) . . . inject a little

20   levity" and that Mr. Pavone "also prefers to practice law with a bit of levity. . . .  Thus, across the

21   223 emails that plaintiff counsel sent as of July 29, 2025, approximately 14 of them contain some

22   element of humor."  ECF No. 125 at 12 (footnotes omitted).

23         The Court does not believe that Mr. Pavone's insults were intended with humor.  They

24   were caustic, deeply personal, and offensive.  He kept repeating his offensive comments, including

25   in filings in this Court, even after his opponents made it clear that the comments were unwelcome.

26   These are not the actions of a humorist.

27         Mr. Pavone also argues that he either has not violated Rule 11-4 or that the rule is too

28   vague to be enforceable, and that he has a First Amendment right to insult his opponents.  He

1    contends:

> As to Local Rule 11-4(a)(4), this provision states that the practice of
> law should be conducted with "practice with the honesty, care, and
> decorum required for the fair and efficient administration of justice."
> There is no suggestion of dishonesty in counsel's various
> communications. Counsel has no earthly idea what "care" is
> supposed to mean, but if it is anything resembling the concept of
> competence or avoidance of negligence, this is not alleged here
> against plaintiff counsel, and in any event, practicing law
> incompetently is a problem for the defendants in this motion, not
> plaintiffs.
>
> As to the idea of "decorum," this is too vague to be enforceable as a
> constitutional matter. It could mean that attorneys should not be
> overly emotional in their prose; or it could mean they should never
> write using exclamation marks or capital letters; or it could mean
> they should not joke; or it could mean they should never be critical
> or insulting; or it could require them to honor their word. Or it
> could mean that attorneys are supposed to write in the manner that
> government attorneys write, in a vapid style that is dull enough to be
> mistaken for – or relieve one from needing to take – a pile of
> valium.

ECF No. 125 at 32.

     The Court rejects this argument. While there might be applications of Rule 11-4 in which its language is vague—a question this Court does not address—there is no reasonable doubt that Mr. Pavone's comments are inconsistent with the decorum expected of attorneys who practice in this Court. Civ. L.R. 11-4. Mr. Pavone has failed to maintain the respect due to courts of justice and judicial officers.

     Mr. Pavone's disparaging comments—including his accusations of dishonesty, immorality, and incompetence, and his comparisons of defense counsel to the Ku Klux Klan—are untenable. They are "the type of behavior that brings the entire profession into disrepute." *Hansen v. U.S. Bank, Nat'l Ass'n*, No. 4:15-CV-00085-BLW, 2016 WL 7105865, at *3 n.1 (D. Idaho Dec. 5, 2016). The Court admonishes Mr. Pavone that his conduct violates Local Rule 11-4 and the guidelines cited in this order, and his uncivil behavior must stop.

     Defendants do not seek sanctions, and the Court does not impose any. The Court does, however, admonish Mr. Pavone to be civil in his interactions with opposing counsel and to cease the use of invective. As other courts have done, this Court also orders Mr. Pavone to review and comply with Civil Local Rule 11-4 and the Northern District's Guidelines for Professional

United States District Court
Northern District of California

7

1    Conduct going forward.  The Court will enforce these guidelines as an order of the Court.  *See*

2    *White v. Luna*, No. 2:23-CV-05315-DDP-AJR, 2024 WL 3973036, at *5 (C.D. Cal. June 17,

3    2024) (ordering the parties to review the district's Civility and Professionalism Guidelines and

4    stating the Court would enforce them "as an Order of the Court.") (citing *Quiroz v. Little Libros*

5    *LLC*, 2022 WL 17190214, at *1 (C.D. Cal. July 1, 2022); *Dolores Press, Inc. v. Robinson*, 2020

6    WL 3881617, at *3 (C.D. Cal. Apr. 23, 2020); *Browne v. Clark*, No. 2:21-CV-02840-AB-AJR,

7    2025 WL 1683640, at *10 (C.D. Cal. June 12, 2025) (directing counsel to carefully read the

8    district's Civility and Professionalism Guidelines and reserving the right to use the guidelines as a

9    basis for sanctions).  Violations of this order will, in the Court's discretion, be a basis for the

10   imposition of monetary sanctions.

11        As for Mr. Pavone's First Amendment arguments, the Court observes for now only that

12   whatever protections apply to Mr. Pavone's speech, those protections have their limits.  "The

13   Supreme Court has held that speech otherwise entitled to full constitutional protection may

14   nonetheless be sanctioned if it obstructs or prejudices the administration of justice."  *In re*

15   *Oladiran*, No. MC-10-0025-PHX-DGC, 2010 WL 3775074, at *4 (D. Ariz. Sept. 21, 2010) (citing

16   *Standing Committee on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman,* 55

17   F.3d 1430, 1442 (9th Cir.1995)).  "It is within a trial court's discretion to dismiss a plaintiff's case

18   with prejudice because of the plaintiff's abusive behavior towards opposing counsel and the

19   Court."  *McCrudden v. DeMarco*, No. 8:22-CV-00407-JDE, 2023 WL 1765907, at *7 (C.D. Cal.

20   Feb. 3, 2023) (collecting cases).  The Court does not decide here whether Mr. Pavone's comments

21   rise to the level of prejudicing the administration of justice.  The Court hopes that, going forward,

22   Mr. Pavone will comply with his obligations of civility such that the Court need not reach that

23   question.

24        To some extent, there has already been a sanction for Mr. Pavone's conduct, which is the

25   injury to his credibility with the Court.  *Martin v. Sephora USA, Inc.*, No. 1:22-CV-01355-JLT-

26   SAB, 2023 WL 2717636, at *8 n.7 (E.D. Cal. Mar. 30, 2023) (noting that "the use of

27   unnecessarily inflammatory language lacking a substantive basis only serves to signal to the Court

28   that a claim or defense is without merit and it may, in addition, hurt the reputations and credibility

United States District Court
Northern District of California

of counsel"), *report and recommendation adopted*, No. 1:22-CV-01355-JLT(SAB), 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023).

### CONCLUSION

"The dignity, decorum and courtesy that have traditionally characterized the courts and legal profession of civilized nations are not empty formalities.  They are essential to an atmosphere that promotes justice and to an attorney's responsibility for the fair and impartial administration of justice."  Civility Guidelines at 4.

For the reasons stated above, Defendants' request for an admonishment is granted.  Mr. Pavone is ordered to cease his uncivil communications and to conform his conduct to the requirements of Civil Local Rule 11-4 and the civility guidelines cited in this Order.

**IT IS SO ORDERED.**

Dated: August 29, 2025



_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California